UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCO PROANO | No. 16 CR 590<br><br>Judge Gary Feinerman |

**GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENDANT'S MOTION TO COMPEL DISCOVERY
AND MOTION TO DISMISS INDICTMENT**

The UNITED STATES OF AMERICA, by its attorney, JOEL R. LEVIN, Acting United States Attorney for the Northern District of Illinois, respectfully requests that this Court deny defendant's motion to compel discovery and motion to dismiss the indictment in this matter, without a hearing. R. 49, 52.

## I.     Background

On September 15, 2016, the grand jury returned a two-count indictment against defendant Marco Proano. Dkt. No. 1. It charged him with, on or about December 22, 2013, depriving Victim A and Victim B of their constitutional rights—specifically, the right to be free from the use of unreasonable force by a police officer, protected by the Fourth Amendment as incorporated against the states by the Fourteenth Amendment. *Id*. The government alleges that on that day, defendant, an officer with the Chicago Police Department, fired 16 shots into a moving vehicle with numerous passengers. Victim A was shot in the shoulder. Victim B was shot in the thigh and foot. An August 21, 2017, trial is scheduled in this matter.

Since defendant's indictment, the prosecution team in this matter (specifically, the undersigned Assistant United States Attorneys) has produced to defendant approximately 4,500 pages of documents as well as over a dozen other discs containing audio- and video-recordings, pursuant to the government's discovery obligations under Federal Rule of Criminal Procedure 16. In addition, defendant has received approximately 1,950 pages of additional discovery from a separate government "filter team."

The government explained the existence of this "filter team" to defendant in an October 6, 2016, letter. *See* Ex. A at 1-2. In that letter, the prosecution team explained that the government had in its possession "documents containing statements made by the defendant that could be considered as having been given under administrative compulsion and therefore could not be used against him in any criminal investigation or proceeding pursuant to *Garrity v. New Jersey*, 385 U.S. 493 (1967)." *Id.* The letter described those materials as including "[s]tatements defendant made to the Independent Police Review Authority ("IPRA") in connection with IPRA's investigations of the December 22, 2013, shooting as well as other shootings involving defendant" and "IPRA reports referencing statements that defendant has made to IPRA." *Id.* at 2. The letter continued: "The undersigned Assistant United States Attorneys have not reviewed these aforementioned documents." *Id.* The letter further explained that Assistant United States Attorneys, other than the prosecutors assigned to this matter, had reviewed the materials that

contained defendant's potentially compelled statements and could produce those materials to defendant upon his request. *Id.*

In late January 2017, defendant made that request. *See* Ex. B at 2. The government's filter team produced those documents to defendant in February and March 2017. *See* Ex. C (letters accompanying discovery to defendant, provided by Assistant United States Attorneys Jordan Matthews and Nani Gilkerson).

In late January 2017, defendant also served subpoenas on IPRA and the Cook County State's Attorney's Office requesting "any and all communications, including emails concerning this case." Ex. B at 2. In connection with defendant's subpoenas, the government agreed to produce communications between FBI agents who have worked on this matter and employees of IPRA and the Cook County State's Attorney's Office to the extent any such communications existed and were subject to discovery under Rule 16. *Id.* at 1-2.

The government later acknowledged the existence of such emails, explaining to defendant in written correspondence and by telephone that it had located approximately two dozen emails between FBI agents who had worked on this matter and employees of IPRA and Cook County.[1] *See, e.g.*, *id.* at 1. The government explained that the majority of these emails were logistical in nature, *e.g.*, requesting and arranging for the pick-up of materials related to this case from IPRA

---

[1] The emails between FBI agents and employees of Cook County are with employees of the Illinois Department of Corrections and the Office of the Cook County Public Defender. They pertain to the coordination of witness interviews. The government is not aware of any emails between FBI agents and employees of the Cook County State's Attorney's Office regarding this case.

3

investigators. Other emails contained brief reports from the FBI to IPRA regarding the general status of FBI investigations into potential civil rights violations, including the investigation into defendant's shooting. Lastly, some emails reflect communications between the FBI and IPRA regarding the release of documents—related to this case and other investigations—pursuant to IPRA's Transparency Policy and in response to requests made via the Freedom of Information Act ("FOIA") and other litigation. The government told defendant that, in its view, these emails were not subject to discovery under Rule 16.

On May 12, 2017, defendant filed a motion to compel production of these emails as well as a motion to dismiss the indictment in this matter. R. 49, 52.

**II. Argument**

    **A. This Court Should Deny Defendant's Motion To Compel the Production of Documents That Are Irrelevant and Not Material to His Defense.**

Defendant moves to compel production of the emails described above because he believes they are relevant to his contention that "through the course of his prosecution, the government violated his constitutional rights by utilizing statements he made to IPRA investigators, which were compelled under a threat of job loss." Dkt. No. 49 at 4. As also discussed in response to defendant's motion to dismiss the indictment, *see infra*, defendant has not proffered any evidence to support this remarkable assertion. He has not identified a single *Garrity*-protected statement that he believes the government impermissibly used during its investigation and prosecution. At best, defendant points to reports chronicling the acknowledged fact

that the government received documents from IPRA related to defendant that contained *Garrity*-protected materials. Dkt. No. 49 at 5, Exs. D and E.

Evidence that the government *obtained* such statements, however, is different from evidence that the government *used* such statements. *See In re Grand Jury Subpoena*, 75 F.3d 446, 448 (9th Cir. 1996) ("When a statement has been compelled by immunity, the focus then shifts to the *use*, rather than the *obtaining*, of the witness's statement."). The Fifth Amendment privilege recognized by the Supreme Court in *Garrity* applies only to the latter scenario, not the former. *Id.* ("The application of the Fifth Amendment privilege is to protect against any improper *use* of the compelled statement.") (emphasis added).

To ensure that a prosecution team does not impermissibly use a defendant's compelled statements, courts have approved the implementation of a government filter team: "Department of Justice personnel who are not involved in the investigation or prosecution" and "who redact privileged testimony before either the grand jury or the prosecuting attorneys see the statement." *Id.* (citing *In re Grand Jury Subpoena*, 40 F.3d 1096, 1103 (10th Cir. 1994)). Such a procedure works in the context of criminal proceedings where "[s]elf-policing by the prosecution is frequent . . . such as in the government's obligations to produce from its files evidence which is exculpatory, is impeachment of a witness, or is a witness." *Id.* There is a "presumption that the government obeys the law." *Id.*

In this case, the prosecution team followed this precise procedure. At the outset of its investigation into defendant, it instituted a filter team comprised of

5

Assistant United States Attorneys not otherwise involved in this investigation. The filter team reviewed any materials obtained by the FBI and the prosecutors in this matter that might include *Garrity*-protected statements. The universe of those materials was extensive. It included all materials obtained from IPRA, both related to the shooting charged in the indictment as well as other instances of uses of force in which defendant has been involved; transcripts of defendant's testimony in a civil trial involving allegations of the use of excessive force by defendant; and news articles regarding defendant. The filter team reviewed these materials to identify any *Garrity*-protected statements by defendant and other material that, in its judgment, may have been derived from *Garrity*-protected statements. The filter team redacted these statements and materials, returning to the prosecution team only the redacted version of documents and keeping in its possession the un-redacted version. In instances where an entire document was protected under *Garrity*—for example, a transcript of defendant's post-shooting interview with IPRA investigators—the filter team withheld that document altogether from the prosecution team.

It is the prosecution team's understanding that the filter team produced to defendant un-redacted versions of the same documents that the prosecution team (including the FBI agents who have worked on this investigation) has seen only in their redacted form. Similarly, it is the prosecution team's understanding that the filter team produced to defendant documents that it withheld entirely from the prosecution team (again, including the FBI agents who have worked on this investigation).

In sum, the prosecution team used a judicially approved method, a filter team, to ensure that it did not impermissibly use any *Garrity*-protected statements in its investigation or prosecution of defendant. Defendant was aware of the existence of the filter team and the nature of its work. And despite having received thousands of pages of discovery from the government to date, defendant has not pointed to any evidence suggesting that the filter team's work notwithstanding, the prosecution team violated his rights under *Garrity*.

Even if defendant did point to evidence of such a violation, he still has not shown how the emails described above, between FBI agents and IPRA employees, are relevant to his defense. The emails describe the logistics of collecting materials, include very general comments about the status of ongoing civil-rights investigations (not just defendant's), and discuss the release of materials by IPRA to the public pursuant to the agency's Transparency Policy and FOIA. Under Federal Rule of Criminal Procedure 16, the government must disclose to defendant his statements, his criminal history, and any documents that are "material to preparing the defense," that "the government intends to use . . . in its case-in-chief at trial," or that "was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(A), (B), (D), and (E). The emails that are the subject of defendant's motion to compel do not fall into these categories.

Finally, under Federal Rule of Criminal Procedure 16(d)(1), this Court may also inspect the emails at issue *ex parte*, *in camera* to determine whether the government to restrict defendant's discovery. *See e.g., United States v. Nava-Salazar*,

30 F.3d 788, 800-01 (7th Cir. 1994) (approving *ex parte*, *in camera* consideration of government motion to restrict discovery); *United States v. Napue*, 834 F.2d 1311, 1317 (7th Cir. 1987) (same). If the Court would like to conduct an *ex parte*, *in camera* review of the emails, the government will make them available.

    **B.    This Court Should Deny Defendant's Motion to Dismiss the Indictment, Without a Hearing, in the Absence of Any Evidence of Misconduct by the Prosecution Team.**

In his motion, defendant asks the Court to dismiss the facially valid indictment because of purported government misconduct. Defendant's bald accusations are based upon speculation and are wholly unsupported by the facts or the law.

As an initial matter, defendants advancing a grand jury misconduct claim must overcome the presumption of regularity that attaches as a matter of law to grand jury proceedings. *See, e.g.*, *United States v. R Enterprises, Inc.*, 498 U.S. 292, 301 (1991) (citing *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process" (emphasis added))). To defeat this presumption and obtain relief, defendants must meet the demanding threshold of demonstrating misconduct of a grave nature that substantially influenced in an improper way the grand jury's decision to indict. *See In re United States*, 441 F.3d 44 (1st Cir. 2006). Indeed, as defendant notes in his motion, an indictment should be dismissed "only if [defendant] established that [a] violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict

was free from substantial influence of such." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988); *see also Vasquez v. Hillery*, 474 U.S. 254, 263-264 (1986) (affirming grant of habeas petition where evidence showed that African Americans had been systematically excluded from the grand jury, racial discrimination that "undermine[d] the structural integrity of the criminal tribunal itself").

Defendant cannot meet this exacting standard. No misconduct occurred. Indeed, defendant's own motion fails to present any particularized proof of irregularities in the grand jury process. As a result, defendant's motion should be denied and without a hearing.

> 1. **Defendant Has Not Shown that the Government Used *Garrity*-Protected Materials in Its Investigation or Prosecution.**

Defendant contends that the indictment here is "tainted with information obtained by the government's acquisition and use of immunized statements" that he. Dkt. 52 at 3. In support of these assertions, defendant makes numerous incorrect claims and engages in rank speculation. *E.g., id.* at 7 (stating that the government did not "institute[] adequate *Garrity* controls" and that, as a result, it "*appears* that the AUSA . . . reviewed *Garrity* protected statements") (emphasis added). Defendant's unsupported claims do not establish government misconduct, let alone misconduct warranting dismissal of the indictment.

First, as already discussed, defendant's focus on the government's acquisition of materials contained *Garrity*-protected statements is misplaced. The focus of the Fifth Amendment privilege, when applied to police officer's statements to internal

9

investigators, is on the *use* of the statements by prosecuting attorneys, not their acquisition by the government as a whole. *See, e.g., In re Grand Jury Subpoena*, 75 F.3d at 448. Moreover, contrary to defendant's claims otherwise, the government here *has* put into place a filter team to ensure that prosecuting attorneys not review, let alone use, *Garrity*-protected materials. This process has been found sufficient to safeguard against a violation of the Fifth Amendment privilege. *Id*. at 448.

Defendant further claims the government "in fact" used *Garrity*-protected statements. Dkt. 52 at 7-8. Defendant fails, however, to identify any particular *Garrity*-protected evidence the government allegedly used in its investigation. Instead, defendant assumes such statements were used because of a comment made by the government during grand jury testimony from FBI Special Agent Jennifer Ericks, the first of many witnesses who testified before the grand jury in this matter. In particular, the government stated that the grand jury would later hear evidence related to defendant's reasons for shooting into the retreating vehicle. Dkt. 52, Ex. A at 17. But defendant points to no subsequent evidence presented to the grand jury that is *Garrity*-protected.[2]

Speculation that improper statements were presented to the grand jury falls far short of establishing that a violation occurred, and that such a violation

---

[2] As promised during Special Agent Ericks' testimony, the government did present evidence to the grand jury of defendant's reasons for shooting at the vehicle – in the form of presenting defendant's Tactical Response Report. That routine, non-compelled report does not constitute *Garrity*-protected material. *See United States v. Smith*, 821 F.3d 1293, 1302-1303 (11th Cir. 2016) (statements made in duty and incident reports do not constitute *Garrity* materials, in part because such statements are not coerced). The government has previously produced to defendant the grand jury transcript reflecting the presentation of this evidence.

"substantially influenced the grand jury's decision to indict" or created "grave doubt" that the decision to indict was unaffected by such a violation. *Bank of Nova Scotia,* 487 U.S. at 256. Defendant's claims that the government used *Garrity*-protected statements before the grand jury, and that grand jurors relied upon such evidence in returning a true bill, therefore should be rejected.

### 2. The Government Did Not Mislead the Grand Jury on the Law or the Facts.

Defendant further claims that the government misled the grand jury by failing to instruct it properly on the law and failing to provide a sufficient factual basis for the return of a true bill. Both claims fail as a matter of law and fact.

As an initial matter, prosecutors are not required to instruct a grand jury on the law. *See Untied States v. Lopez-Lopez,* 282 F.3d 1, 9 (1st Cir. 2002); *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994). Nor are prosecutors forbidden from providing legal advice to a grand jury. *See United States v. Singer*, 660 F.2d 1295, 1303 (8th Cir. 1981); *United States v. Wiseman*, 172 F.3d 1196, 1205 (10th Cir. 1999), *abrogated on other grounds by Rosemond v. United States*, 134 S. Ct. 1240 (2014). When they do, of course, the instructions should be accurate and should not deliberately mislead the grand jury.

Here, defendant assumes, based upon his review of transcripts of witness testimony before the grand jury, that the government never instructed grand jurors on the law. Had such an assumption been correct, that alone would not constitute misconduct before the grand jury. *See Lopez-Lopez,* 282 F.3d at 9. But that assumption is not correct: As it generally does when presenting an indictment, the

11

government here instructed the grand jury regarding the law applicable to the case, specifically, the elements of a Section 242 offense, as outlined in the Seventh Circuit Pattern Jury Instructions. Consistent with long-standing public policy regarding grand jury secrecy, Federal Rule of Criminal Procedure 6(e), and binding case law, the government did not produce to defendant transcripts of those grand jury proceedings.[3] [4]

Defendant further contends that the government misled the grand jury through its presentation of facts. Dkt. 52 at 8-9. No such misleading occurred. For example, defendant contends that during her testimony, Agent Ericks implied that defendant fired at passengers who he believed had committed a traffic violation, not stolen a vehicle. Dkt. 52 at 11. Defendant fails to point out that multiple officers from the Chicago Police Department testified before the grand jury, at least two of whom testified that they were responding to a suspected stolen vehicle.[5] Similarly, defendant fails to point out, in discussing Sergeant Larry Snelling's grand jury testimony, that a significant portion of Sergeant Snelling's testimony focused on defendant's training on the use of force. That topic is directly relevant to whether

---

[3] Transcripts of statements made by government attorneys, like any other statements made by or before the grand jury in session, clearly constitute grand jury materials and are presumptively secret and subject to disclosure only in extremely limited circumstances. *See* Fed. R. Crim. 6(e); *Douglas Oil Co. v. Petro Stops N.W.*, 441 U.S. 211, 222 (1979); *United States v. Puglia*, 8 F.3d 478, 480 (7th Cir. 1993) ("Grand Jury proceedings are cloaked in secrecy.").

[4] Defendant further contends that the government should have instructed the grand jury on an Illinois state law. Dkt. 52 at 8, 11. But defendant fails to explain how Illinois state law is at all relevant to this federal criminal case.

[5] The government has previously produced these transcripts to defendant.

defendant acted willfully and unreasonably during the charged offense, which the government must prove to establish a violation of Section 242. *See United States v. Brown*, No. 14 CR 674, 2016 WL 806552, at *4 (N.D. Ill. Mar. 2, 2016) (excluding expert testimony on use of force but permitting testimony of training officers); *United States v. Rodella*, No. 14–2783, 2014 WL 6634391, at *14 (D. N.M. Nov. 20, 2014) ("If it is shown that [a defendant] received training on how to properly perform [a particular duty] and it is shown that [the defendant] disregarded that training, then this information is relevant to whether [the defendant] willfully violated [the victim's] constitutional rights.").

But even more to the point, the Supreme Court has held that a facially valid indictment should not be subject to challenge on the ground that the grand jury acted on the basis of inadequate or insufficient evidence. *See Costello v. United States*, 350 U.S. 359, 363 (1956); s*ee also United States v. Roth*, 777 F.2d 1200, 1202-04 (7th Cir. 1985). The grand jury may draw its information from a wide variety of sources and "the validity of an indictment is not affected by the character of the evidence considered." *United States v. Malsom*, 779 F.2d 1228, 1241 (7th Cir. 1985) (citing *United States v. Wilson*, 732 F.2d 404, 409 (5th Cir.1984)). Indeed, except in limited circumstances not applicable here, neither the Federal Rules of Evidence nor constitutionally based exclusionary rules apply to grand jury proceedings. *See* Fed. R. Evid. 1101(d)(2); *United States v. Williams*, 504 U.S. 36, 54 (1992).

Defendant is protected from any purported one-sidedness of the grand jury process because he is entitled to the full protections of the Fifth Amendment at a trial

13

on the merits, and at such time is "permitted to expose all of the facts bearing upon his guilt or innocence." *See United States v. Chanen*, 549 F.2d 1306, 1311 (9th Cir. 1977). Defendant's misrepresentations of the government's presentation before the grand jury, and his unfounded imputation of malicious intent by the government, are not valid bases for dismissing a facially valid indictment.

## V. Conclusion

The government respectfully requests that this Court deny both defendant's motion to compel and motion to dismiss the indictment without a hearing.

> Respectfully submitted,
> ZACHARY T. FARDON
> United States Attorney
>
> By: */s/ Georgia N. Alexakis*
> GEORGIA N. ALEXAKIS
> ERIKA L. CSICSILA
> Assistant United States Attorneys
> 219 S. Dearborn Street, Fifth Floor
> Chicago, Illinois 60604
> (312) 353-5300

Dated: May 19, 2017