# EXHIBIT 2



U.S. Department of Justice

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| *Erika L. Csicsila*<br>*Assistant United States Attorney* | *Dirksen Federal Courthouse*<br>*219 South Dearborn Street, Fifth Floor*<br>*Chicago, IL 60604* | *Direct Line: (312) 353-5370*<br>*Fax: (312) 886-0657*<br>*E-mail: erika.csicsila@usdoj.gov* |

June 23, 2017

**Via E-Mail (dan.herbert@danherbertlaw.com)**
Dan Herbert
Herbert Law Firm
206 S. Jefferson, Suite 100
Chicago, IL 60661

Re: *United States v. Marco Proano*, 16 CR 590

Dear Mr. Herbert:

At a trial in this matter, the government anticipates that it will call Larry Snelling and Andrea Hyfantis to testify about training defendant Marco Proano received as a Chicago Police Department recruit and officer.

The government does not believe this testimony constitutes expert testimony within the meaning of Rule 702 of the Federal Rules of Evidence and Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.

In an abundance of caution, however, the government makes the following expert disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G):

### I. CPD Sergeant Larry Snelling

The government expects CPD Sergeant Larry Snelling will testify about training Marco Proano received as a Chicago Police recruit and officer.

a. Background

Sgt. Snelling is a Supervisor in the Chicago Police Department's Education and Training Division. Before being assigned to the Physical Skills section in approximately 2001, Sgt. Snelling worked in the Second District and the Englewood District. Sgt. Snelling was a Physical Skills Instructor and Tactical Coordinator for

CPD from approximately 2001 to 2010. In approximately 2010, Sgt. Snelling was promoted to be the Supervising Sergeant in preparing CPD personnel for the North Atlantic Treaty Organization (NATO) Conference. Sgt. Snelling served in this role until approximately 2012, when he returned to the Physical Skills section as a supervisor. Over the years, Sgt. Snelling has taught classes in use of force, defensive tactics, physicals skills and control tactics, as well as a class on leadership. As part of his training responsibilities, Sgt. Snelling also teaches new recruits about the limits of police power, including the responsibility to safeguard citizens' rights.

b. Anticipated Testimony

In summary, Sgt. Snelling is expected to testify that he trained recruits in CPD's police academy, including on control tactics during the time period the defendant was a recruit. As to his testimony, Sgt. Snelling is expected to testify about the training that Marco Proano received as both a CPD recruit and officer. Sgt. Snelling will testify that generally, new recruits receive training in multiple areas, including report-writing, the use of force, and the use of deadly force. New recruits are trained in multiple ways, including through scenario-based training, physical training, firearms training, and classroom instruction and testing. Throughout these various means of training, the principles underlying the use of force and use of deadly force training are reiterated. CPD's recruit training takes place over approximately six months, and involves at least 960 hours of training, which is in excess of the 450 hours of training required by the State of Illinois.

With respect to training regarding use of force, Sgt. Snelling will testify that recruits are taught about the circumstances under which it is proper for an officer to use force against a citizen, and the general principle that the amount of force used be proportionate to the need for that force. Sgt. Snelling will testify that recruits are trained to use varying levels of force depending on the type of individual that the officer is encountering (i.e., a cooperative subject, an active resister, or an assailant). Sgt. Snelling will testify that recruits are trained to use force to gain control of a subject, and that if the subject does not respond to the initial use of force, the officer can transition to a higher level of force, so long as that escalation of force remains reasonable and not excessive under the circumstances. Conversely, Sgt. Snelling will testify that recruits are trained to continue to assess the need for, and level of, force as a situation evolves, and to be prepared to transition to a lower level of force should circumstances merit such a transition.

Sgt. Snelling will explain that recruits are trained in the use of firearms, including how to draw, hold, and reload their firearms, and when to draw their weapons. More specifically, Sgt. Snelling will explain that recruits are trained that, unless they are in closed quarters, they should not hold their firearm canted, or on a slant, but rather they should hold their weapon in an upright position, and use sight alignment and trigger control. Sgt. Snelling will further testify that recruits are trained, upon the

firing of an entire magazine or clip, to replace it immediately with a fully-loaded magazine or clip so that the firearm remains operational. Further, Sgt. Snelling will testify that recruits are trained that when they reasonably believe there is an existence of deadly force or a threat of deadly force, an officer should be ready with his firearm.

Sgt. Snelling will further testify that recruits are trained to use deadly force. Sgt. Snelling will explain that deadly force means force that is likely to cause death or great bodily harm, such as firing a firearm into the direction of a person. Sgt. Snelling will further testify that recruits are trained that firing a firearm in the direction of a person constitutes deadly force, regardless of where on the person the officer is aiming, or whether the officer intended to strike the person, or whether the person is inside a vehicle.

Sgt. Snelling will further testify that recruits are taught to use deadly force only when the officer or a citizen faces an immediate threat of death or great bodily harm on the part of another person, or to defeat the escape of a person under certain circumstances, namely, (1) the escape of a person who has committed or attempted to commit a forcible felony that involved the infliction or threatened infliction of physical force likely to cause death or great bodily harm, (2) the escape of a person who is attempting to escape by use of a deadly weapon, and (3) the escape of a person who the officer reasonably believes will endanger human life or inflict great bodily harm unless arrested without delay.

Sgt. Snelling will further testify that recruits are trained to not use deadly force in certain situations. More specifically, Sgt. Snelling will testify that, for reasons that include the risk posed to innocent bystanders, recruits are trained not to fire warning shots, fire into crowds, or fire into buildings, doors, windows or other openings when the person fired at is clearly not visible.

With respect to the use of deadly force against persons in moving vehicles, Sgt. Snelling will testify that recruits are trained that firing at or into a moving vehicle is only authorized to prevent death or great bodily harm to the sworn member or to another person. Sgt. Snelling will further testify that recruits are not trained to shoot out tires of a moving vehicle, for reasons that include the risk that shooting at a vehicle's tires will not necessarily eliminate the threat presented by the vehicle. Instead, Sgt. Snelling will testify that recruits are trained to stop the threat, which is to shoot at the driver of a vehicle as reasonable and necessary to prevent death or great bodily harm.

With respect to testing on the use of force, Sgt. Snelling will testify that recruits must pass a written test on deadly force with 100 percent of the answers correct.

Sgt. Snelling will testify that after recruits complete their initial six months of training and leave the academy, they participate in 90 days of field training, split among three different three field training officers. Following the successful completion of their field training, new officers are consider field qualified, and are on a probation for approximately one year. During that time, new officers work with other, veteran officers until they are off probation.

Sgt. Snelling will further testify that officers participate in additional training after their probationary period, including e-learning training which includes additional training on the use of force.

## II. CPD Attorney Andrea Hyfantis

### a. Background

Ms. Hyfantis is an attorney in CPD's Education and Training Division, and has been employed by CPD in that capacity for approximately 22 years. She is licensed to practice in both Illinois and Pennsylvania. In her capacity as an attorney in the Education and Training Division, Ms. Hyfantis has provided legal training to recruits in CPD's police academy.

### b. Anticipated Testimony

In summary, Ms. Hyfantis is expected to testify that she teaches recruits in CPD's police academy on the law, including during the time period the defendant was a recruit. Ms. Hyfantis will testify that CPD recruits are required to take approximately 63 hours of legal training. Ms. Hyfantis will testify that recruits are required to attend the law classes, and are tested on the legal subject matter. Ms. Hyfantis will further explain that recruits are trained on multiple topics, including classes on criminal law, criminal procedure, and the use of force. Ms. Hyfantis will further explain that CPD recruits are required to attend two courses concerning the use of force: (1) a four-hour "Use of Force" course, and (2) a two-hour "Deadly Force" course that focuses on deadly force and justifications for its use.

Ms. Hyfantis will testify that recruits are trained on the Fourth Amendment, how the Constitution and federal law prohibits them from violating citizen's Fourth Amendment rights, and that any use of force has to be justified under the law. Ms. Hyfantis will also testify that recruits are taught that deadly force can be used when it is reasonable and necessary to prevent death or great bodily harm to an the officer or another, or it is reasonably necessary to prevent the defeat of an arrest when (1) a person has committed or attempted to commit a forcible felony that involved the infliction or threatened infliction of physical force likely to cause death or great bodily harm, (2) a person is attempting to escape by use of a deadly weapon, and (3) the

officer reasonably believes a person will endanger human life or inflict great bodily harm unless arrested without delay.

Ms. Hyfantis will further testify that recruits are taught that firing at or into a motor vehicle is only authorized to prevent death or great bodily harm to a sworn member or another person, and the reasons for such training, including the risks such a use of force would pose to innocent bystanders particularly in a dense, urban area. She will further explain that recruits are taught not to fire into crowds, fire warning shots, and fire into buildings or through doors, windows or other openings, unless the person fired at is clearly visible, and the reasons for such training, including the inherent risk such actions pose to bystanders.

She will further testify that recruits are trained to assess situations to determine whether, even if the use of force would otherwise be justified, there is too great a risk to innocent bystanders. She will also testify that recruits are trained that when a justification for the use of deadly force ceases to exist, deadly force is no longer reasonable and necessary under the law.

Ms. Hyfantis will testify that recruits are trained that whenever an officer uses deadly force and it was not justifiable, such use of deadly force may lead to civil or criminal liability.

Finally, Ms. Hyfantis will testify that after taking the Use of Force course, recruits are given a fifteen-question exam and that recruits must answer all fifteen questions correctly. If a recruit answers any question incorrectly, the recruits meets with Ms. Hyfantis to discuss the material again before being re-tested. Ms. Hyfantis will further testify that officers participate in additional training after their probationary period, including additional training on the use of force.

*****

Pursuant to Rule 16(b)(1)(B) and (C), please provide us with the name, qualifications, summary of anticipated testimony, and any reports or analysis generated by your expert(s) as soon as possible.

The government will continue to supplement these materials if/as new materials become available. If you have any questions, please contact us.

                        Very truly yours,

                        JOEL R. LEVIN
                        Assistant United States Attorney

By:   */s/ Erika L. Csicsila*
       Georgia Alexakis
       Erika L. Csicsila
       Assistant United States Attorneys