# EXHIBIT 4

FD-302 (Rev. 5-8-10)

- 1 of 4 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry    04/19/2017

ANDREA HYFANTIS, attorney and legal instructor at the Chicago Police Department (CPD) Training Academy, was interviewed at the CPD Training Academy, 1300 West Jackson Blvd., Chicago, IL. Assistant United States Attorneys (AUSAs) Georgia Alexakis and Erika Csicsila were also present. After being advised of the identity of the interviewing parties and the nature of the interview, HYFANTIS provided the following information:

HYFANTIS has worked at the CPD Training Academy for about twenty-two years. She has been licensed to practice law in both Illinois and Pennsylvania. HYFANTIS' primary job has been to lecture both new recruits and in-service training as necessary. Sometimes HYFANTIS has addressed legal questions for CPD.

HYFANTIS was often deposed for "Failure to Train" allegations made against the city with a deposition as recent as the previous week. The only time HYFANTIS had testified in court was in the Federal trial of former CPD Officer Aldo Brown.

HYFANTIS was asked if she had taught Officer MARCO PROANO in the CPD Training Academy (the academy), starting in 2006. HYFANTIS said she was teaching at the academy in 2006, but she would not be able to know whether she specifically taught PROANO. In the recruits' training schedule, legal courses did not show the name of the instructors, but only "Law Unit." The academy only recently kept track of which instructor taught each course. In 2006, there were two full-time licensed attorney positions, which included HYFANTIS and YOLANDA SAYRE. SAYRE recently left CPD. Since that time, HYFANTIS has been splitting her lecturing with two people assigned to Instructional Design and Quality Control (IDQC).

At the academy, CPD recruits were provided two courses concerning the use of force. The first course they received was a four-hour "Use of Force" course that covered Illinois case law and statutes. HYFANTIS said she also referred to this course as "Law on Deadly Force." The second class was a two-hour "Deadly Force" course that focused specifically on CPD's policy regarding deadly force. In Deadly Force, instructors went through CDP's policy word-for-word and all recruits received the same materials.



| Investigation on | 04/12 | at | Chicago, Illinois, United States (In Person) |

File #

Date drafted    04/12/2017

by   Curt Haralson, PABARCUS JEFFREY ALAN
This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)



Continuation of FD-302 of (U) Interview of Andrea Hyfantis , On 04/12/2017 , Page 2 of 4

HYFANTIS or SAYRE would have taught these two courses in 2006. HYFANTIS did not know who else the academy would have had teach it at that time. "It was probably me or YOLANDA," especially for "Deadly Force" and "Arrest, Search, and Seizure" because of their importance. All legal instructors used the same materials, which HYFANTIS prepared.

The Use of Force exam was given to the recruits after the four-hour Use of Force course. The exam had fifteen questions and recruits were required to answer all fifteen questions correctly. If recruits missed any of the questions, HYFANTIS would go over the questions with them and they would be retested. The exam was not focused on getting recruits fired, but to make sure they understood the material.

Throughout the training academy, there was overlap in many areas. For example, in Control Tactics, recruits were taught the application of Use of Force. The underlying standard was that use of force be "reasonable and necessary." HYFANTIS did not know what was in the lesson plans for courses taught outside of the Law Unit.

HYFANTIS taught the recruits that they "still need to determine if something is reckless" or they could be held liable. She also taught recruits to think about the risk of innocent bystanders even when they are otherwise justified to use deadly force.

When HYFANTIS was asked about the instructor notes on pages seven and eight of the Deadly Force Policy curriculum, HYFANTIS stated, "this is probably exactly what I would say" to the recruits. When asked how she would define a deadly weapon, HYFANTIS said anything could be considered a deadly weapon if it was capable of causing great bodily harm in the hands of the subject.

HYFANTIS noted CPD's Deadly Force Policy was more restrictive than state law. CPD's policy makers determined they would rather officers let a subject get away than shoot at a moving vehicle. However, the policy did not prohibit shooting at a subject in a moving vehicle if necessary to prevent death or serious bodily injury. HYFANTIS also taught recruits that when their justification to use deadly force is gone, deadly force is no longer reasonable and necessary. The moment deadly force is used is what matters. HYFANTIS taught recruits "just because someone resists you doesn't mean you can beat the crap out of them."

HYFANTIS was shown page eight of the Deadly Force Policy curriculum where firing into crowds is prohibited and asked if any more detail was

FD-302a (Rev. 05-08-10)



Continuation of FD-302 of (U) Interview of Andrea Hyfantis , On 04/12/2017 , Page 3 of 4

taught about what comprised a crowd. HYFANTIS said nothing else was taught about what exactly was considered a crowd. HYFANTIS taught recruits that they always had to consider innocent bystanders.

HYFANTIS was also shown page eight of the Deadly Force Policy curriculum where it was prohibited to fire "into buildings or through doors, windows, or other openings, unless the person lawfully fired at is clearly visible." HYFANTIS said she taught recruits that they must always look at what is reasonable.

HYFANTIS was asked about the film "Shoot Don't Shoot," which was shown to recruits as part of the Deadly Force Policy curriculum. HYFANTIS noted that the film was meant to generate discussion and that it was not a breakdown of state law. The film showed officers discussing their experience with shootings. Although the film was made in the 80's, it was still relevant today. One scenario in the film showed the complications involved with a shooting in a convenient store with other people present.

HYFANTIS was shown a copy of PROANO's "eLearning" records, titled "Career Development Center for MARCO PROANO" and was asked about the four-part Use of Force training shown completed online on October 18, 2009. HYFANTIS said she may not remember correctly, but she thought these courses included streaming videos. HYFANTIS thought she remembered seeing the videos, which may have been narrated by a commander and HYFANTIS did not remember anything wrong with the videos. HYFANTIS thought the scores of "100" shown next to these courses on PROANO's record meant that the videos were completed. She acknowledged that they could have been scores. HYFANTIS did not know if there were questions answered after the videos. She also did not remember seeing any material which would have been used for these courses other than the videos.

HYFANTIS was also asked about the training on this same report titled "Use of Force Policy," shown completed by PROANO on July 25, 2013. HYFANTIS thought this was where officers probably read a rewording of CPD's Deadly Force Policy, which addressed shooting at vehicles.

HYFANTIS was not interviewed during the Department of Justice's (DOJ) recent investigation of CPD. HYFANTIS said she was upset that nobody from DOJ ever spoke to her about any of the legal training provided to recruits.

A copy of the course material shown to HYFANTIS, "Deadly Force Policy: 2 Hours," was digitally attached to the 1A file associated with this communication.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) Interview of Andrea Hyfantis , On 04/12/2017 , Page 4 of 4

FBI-RPTS_007-000007