UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 590 |
| v. | ) | |
| | ) | Honorable Gary Feinerman |
| MARCO PROANO | ) | |

**GOVERNMENT'S RESPONSES TO DEFENDANT'S
CONSOLIDATED MOTIONS *IN LIMINE***

The United States of America, by and through JOEL R. LEVIN, Acting United States Attorney for the Northern District of Illinois, respectfully submits its responses to defendant's consolidated motions *in limine*.  Dkt. No. 80.

**I.    Defendant's Motion To Bar Government Witnesses from Testifying Regarding Any Opinion on the Reasonable Use of Force.**

No government witness will offer an opinion on whether defendant used excessive force on December 22, 2013.  *See Thompson v. City of Chicago*, 472 F.3d 444, 457-58 (7th Cir. 2006) (affirming district court's decision, under Federal Rule of Evidence 403, to exclude "expert testimony . . . regarding whether [the defendant officer] violated the Fourth Amendment by using excessive force").  The government will call two fact witnesses—CPD Sergeant Larry Snelling and CPD Attorney Andrea Hyfantis—to testify about training defendant received as a CPD recruit and officer regarding the use of force, including training on the use of deadly force.  The government addresses the admissibility of that anticipated testimony, and related evidence, in response to defendant's motions in limine III, VII, X, and XI.

II.  **Defendant's Motion To Bar Government From Referencing Any Citizen Complaints, Disciplinary Proceedings, and Civil Suits Filed Against Defendant, or Other Police Shootings Involving Defendant.**

The government does not intend to introduce any evidence affirmatively regarding any citizen complaints, disciplinary proceedings, and civil suits relating to defendant.  It also does not intend to introduce any evidence related to other police shootings, or even more broadly, uses of force, in which defendant has been involved.

Defendant, however, could "open the door" to such evidence in a number of ways.  For example, defendant could offer evidence erroneously suggesting that he has never before used deadly force as an officer.  He could offer evidence suggesting that his state of mind with respect to the charged shooting was influenced by his prior use of deadly force as a CPD officer, the outcome of any investigation by CPD or IPRA into a prior use, or commendations defendant received regarding a prior use of deadly force.  Defendant could also offer evidence or testimony erroneously suggesting that he is unfamiliar with Tactical Response Reports and the role they play in CPD and IPRA investigations into an officer's use of force.  These examples are not meant to be an exhaustive list of the ways in which defendant could "open the door" to evidence that might otherwise have been inadmissible, but they are representative of arguments defendant could make or evidence he could introduce that would make relevant and admissible some of defendant's prior bad acts.

If defendant does open such a door, the government will seek leave from the Court before trying to introduce evidence of defendant's prior instances of force, previous citizen complaints, disciplinary proceedings, or civil suits against defendant.

*See United States v. Curtis*, 781 F.3d 904, 909-11 (7th Cir. 2015) (although initially found inadmissible by the district court under Rule 404(b), evidence of defendant's failure to pay taxes in years after the charged conduct became relevant and admissible after defendant testified in a manner suggesting that he was presently compliant with all tax obligations); *United States v. Schmitt*, 770 F.3d 524, 536 (7th Cir. 2014) (a defendant "opens the door" to otherwise inadmissible evidence when he affirmatively places at issue the specific matter that the evidence is being offered to establish). Similarly, if the governments finds that it has a good faith basis to believe that defendant gave untruthful statements in connection with an investigation or judicial proceeding related to a prior use of force, it will seek leave from the Court before cross-examining defendant pursuant to Federal Rule of Evidence 608(b).

## III. Defendant's Motion To Bar Government Witnesses From Offering Evidence, Testimony, or Argument Regarding Violation of CPD Policy and Procedure.

The government addresses this motion as part of its response to defendant's motions in limine X and XI.

## IV. Defendant's Motion To Bar Government From Referencing Any Other Case or Event Involving Alleged Police Misconduct.

The government will not reference any other case or event involving alleged police misconduct.

## V. Defendant's Motion To Bar Government From Offering Any Testimony as to How Defendant's Firearm Was Positioned.

This Court should permit the government to introduce evidence and testimony, and to make arguments, about the manner in which defendant held his firearm

immediately before he shot Victims A and B on December 22, 2013. Contrary to defendant's asserted objections, this evidence is relevant, would not be unduly prejudicial, and does not risk misleading the jury. Fed. R. Evid. 401, 403.

The shooting incident here took place over a very short period of time. The dash-cam video depicting the shooting shows defendant in the seconds before he shot Victims A and B. As seen in the video, defendant emerged from his CPD squad car, immediately drew his firearm, and canted it (meaning, held it in a slanted manner) as he approached the Toyota in which Victims A and B were passengers. As the Toyota began to reverse, defendant fired 16 shots in its general direction.

The government's evidence at trial will establish that, as a recruit in CPD's academy, defendant was trained not to cant his gun except in very limited circumstances, for example, when in close quarters. Defendant was otherwise trained to hold his gun in an upright position in order to exert greater control over his firearm. The evidence at trial also will establish that defendant was trained on a number of other principles relevant to the underlying facts here—namely, to use deadly force only when reasonable and necessary, to shoot at moving vehicles only in limited circumstances, and to refrain from shooting in circumstances involving crowds and when his intended target was not clearly visible.

The manner in which defendant held his firearm before using deadly force is not in and of itself an instance in which defendant used excessive force against Victims A and B. But evidence of the manner in which defendant held his firearm is still relevant to the alleged Section 242 offenses. To establish that defendant violated

4

Section 242, the government must establish that defendant acted with the specific intent to deprive Victims A and B of their Fourth Amendment rights. *See United States v. Bradley*, 196 F.3d 762, 769-70 (7th Cir. 1999). How defendant held his gun mere seconds before firing bears on defendant's state of mind at the time of the shooting. That he emerged from his squad car with his gun already drawn and positioned in a cavalier manner helps demonstrate that defendant did not soberly assess the situation before electing to use force. Evidence regarding the positioning of the firearm thus increases the likelihood that defendant did not act to save the life of one of the Toyota's passengers—as he maintained the night of the shooting—but rather for other, unlawful reasons. Relatedly, that defendant held his firearm in a manner contrary to his training helps demonstrates that defendant disregarded his training, about the Fourth Amendment and otherwise, when he shot Victims A and B, again demonstrating defendant's subjective intent when firing. Finally, the value of the evidence concerning the position of defendant's firearm is especially probative given that it took place immediately before the shooting.

When presented with evidence of the events immediately preceding an alleged unlawful use of force, other district courts have admitted such evidence, over objections under Rule 401 and 403, as probative of defendant's state of mind and credibility as well as for overall context. *See Lovett v. Cole*, No. 1:11-CV-277, 2014 WL 5802667, at *2 (S.D. Ohio Nov. 7, 2014) ("[E]vidence of the events that transpired prior to, during, and immediately after the cell search are relevant and indeed necessary to prove [defendant's] state of mind at the time of the use of force

5

incident."); *Whitehead v. Bond*, 782 F. Supp. 2d 685, 690 (N.D. Ill. 2011), *aff'd* 680 F.3d 919 (7th Cir. 2012) (in Section 1983 suit, admitting evidence of events immediately before officers allegedly used excessive force against plaintiff because such evidence "provided the necessary context for the situation giving rise to [plaintiff's] claims" and "was extremely probative to evaluating the truthfulness of each side's version of events"). This Court should follow suit.

Defendant maintains that, relevance aside, evidence of the manner in which he positioned his firearm violates Rule 403. Defendant does not articulate, however, how the probative value of the manner in which he positioned his firearm is outweighed, let alone substantially, by a danger of unfair prejudice or misleading the jury. This is a case in which defendant fired 16 bullets in the direction of a car full of teenagers, shooting one teenager through the shoulder and a second teenager through the thigh and ankle. Given the nature of the evidence the jury will already hear regarding the amount of force used and the extent of the bodily injury caused, the fact that defendant canted his weapon before firing it cannot be considered so unfairly prejudicial as to warrant exclusion under Rule 403.

## VI. Defendant's Motion To Bar Government From Offering Any Testimony as to Whether Other CPD Officers on Scene Drew Their Weapons.

The government should be permitted to elicit testimony as to whether other officers on the scene at the same time as defendant drew their weapons. Such evidence is probative of the objective reasonableness of defendant's actions and establishes a causal link between defendant's use of force and the bodily injuries

suffered by Victims A and B.  In seeking to exclude this evidence, defendant does not even attempt to articulate a reason as to why it is irrelevant, and his motion therefore should be denied.

To prove that defendant violated Section 242, the government must establish that defendant's use of deadly force was unreasonable.  *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Scott v. Edinburg*, 346 F.3d 752, 755-56 (7th Cir. 2003); *DeLuna v. City of Rockford, Ill.*, 447 F.3d 1008, 1010 (7th Cir. 2006).  To determine the reasonableness of defendant's actions, a jury must consider what "a reasonable officer on the scene" would have done.  *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *see also* Fed. Civ. Jury Instr. 7th Cir. 7.09 (2010) ("You must decide whether the defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that the defendant faced.").

Here, two other CPD officers were on the scene at the time that defendant drew and fired his firearm.[1]  These two officers faced the same circumstances that defendant faced.  Whether those officers drew their firearms therefore directly bears on the question of whether defendant's decision to draw and fire his gun (16 times, no less) was reasonable.  This is especially true when evidence at trial will show that as a recruit in the academy, defendant was trained to draw his firearm only in situations when he anticipated needing to use force.

In addition, the indictment charges that defendant's actions, including his "use

---

[1] A third officer was nearby, chasing a suspect, but did not witness defendant's use of deadly force or the events immediately preceding it.

7

of a dangerous weapon," is what resulted in bodily injury to Victims A and B. Dkt. No. 1. Evidence as to whether the other two officers on the scene drew and fired their weapons is therefore relevant to proving that it was defendant's actions, and not the actions of any other officer, that caused the victims' gunshot wounds.

## VII. Defendant's Motion To Bar Any Evidence, Testimony, or Argument Regarding Defendant's Post-Academy Training.

The government addresses this motion as part of its response to defendant's motions in limine X and XI.

## VIII. Defendant's Motion to Bar Any Evidence of, or Reference to, IPRA's Investigation into Defendant's Shooting.

The government will not reference IPRA's investigation into defendant's shooting and the outcome of that investigation.

For the same reasons that defendant moves to exclude such evidence, the government moves to exclude any efforts by defendant to introduce evidence of, or make reference to, an investigation conducted by the Cook County State's Attorney's Office into defendant's shooting.

## IX. Defendant's Motion to Bar Any Testimony, Argument, or Evidence Concerning the Release of the Dash-Cam Video in this Matter.

The government will not reference the circumstances surrounding the public release of the dash-cam video in this matter and will not make any references to retired Juvenile Court Judge Andrew Berman.

## X. Defendant's Motion to Bar Certain Testimony of CPD Sergeant Larry Snelling and CPD Attorney Andrea Hyfantis, and Defendant's Motion to Bar Reference to Violations of CPD Policies And Procedure.

In response to defendant's motions I, III, VII, X, and XI, the government states

8

as follows:

### A. CPD Sergeant Snelling and CPD Attorney Hyfantis Should Be Permitted To Testify As Fact Witnesses Regarding Defendant's Training as a CPD Recruit and Officer

At trial, CPD Sergeant Larry Snelling and CPD attorney Andrea Hyfantis should be permitted to testify as fact witnesses regarding training that defendant received as a CPD recruit and officer.[2]

In summary, Sergeant Snelling is a supervisor in CPD's Education and Training Division who has personal knowledge of defendant's training as a recruit and as an officer. Sergeant Snelling attended the academy as CPD recruit, but more significantly, has taught at the academy since approximately 2001, including in 2006, when defendant attended the academy. *See* Gov't Witness Disclosure, Dkt. No. 80 at Ex. 2. In his capacity as an instructor at the academy, Sergeant Snelling has taught classes on the use of force, the use of deadly force, and control tactics.

Sergeant Snelling also has personal knowledge regarding the instruction that CPD recruits, including defendant, received on the proper handling and use of firearms. Sergeant Snelling will testify that he has such knowledge regarding firearms training in part because he is a certified firearms instructor. In addition, Sergeant Snelling will testify that he is "cross-trained" as an instructor at CPD's academy, meaning that he is trained on other subject matters covered in the academy even if he does not necessarily teach that particular subject matter. The "cross-

---

[2] Out of an abundance of caution, the government has made expert disclosures to the defense for both Sergeant Snelling and Hyfantis, but it advised defense counsel that it believes these witnesses are more appropriately treated as fact witnesses. *See* Gov't Witness Disclosure, Dkt. No. 80 at Ex. 2.

training" of academy instructors enhances recruits' training because it allows instructors in one subject matter or setting (e.g., an academy classroom) to reinforce principles taught in a different subject matter or setting (e.g., the academy's physical skills training).

Like Sergeant Snelling, Ms. Hyfantis is an instructor in CPD's Education and Training Division with personal knowledge of defendant's training, both as a recruit and an officer, in the areas of the Fourth Amendment and legal principles governing the use of force and deadly force. Ms. Hyfantis has been a legal instructor at the academy for over 20 years and was one of only two legal instructors who taught at the academy in 2006, when defendant attended the academy. She is therefore familiar with, and in fact developed, the training materials used to teach defendant in her subject matters. *See id.*

As stated in the government response to defendant's first motion in lime, neither Sergeant Snelling nor Ms. Hyfantis will testify as an expert under Rule 702. The government does not intend to elicit testimony from either witness about any opinions they may hold regarding the reasonableness of defendant's use of force against Victims A and B. The mere fact that Sergeant Snelling and Ms. Hyfantis have specialized knowledge does not transform their testimony into expert testimony. Anyone who was present for a training course—secretary, colleague, intern, police officer, or instructor—could testify about their personal knowledge and memory of the class's content and materials distributed to participants because the class and its materials are relevant to defendant's knowledge and state of mind. *See United States*

10

*v. Rodella*, No. 14-2783, 2014 WL 6634391, at *14 (D. NM. Nov. 20, 2014); *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008).

**B.    Testimony from CPD Sergeant Snelling and CPD Attorney Hyfantis Is Relevant.**

Testimony regarding defendant's training is permissible and relevant. Indeed, defendant's training is directly relevant to whether defendant acted willfully and unreasonably, which the government must prove under § 242. *See, e.g.*, *United States v. Brown*, 14 CR 674, 2016 WL 806552, at *4 (N.D. Ill. Mar. 2, 2016) (Kendall, J.) (excluding expert testimony on use of force but permitting testimony of training officers); *Rodella*, 2014 WL 6634391, at *14 ("If it is shown that [a defendant] received training on how to properly perform [a particular duty] and it is shown that [defendant] disregarded that training, then this information is relevant to whether [defendant] willfully violated [the victim's] constitutional rights.").

In addition, because the reasonableness of an officer's conduct is judged in light of the officer's training, testimony regarding training is relevant to the reasonableness of that conduct. *See Rodella*, 2014 WL 6634391, at *15; *see also United States v. Serrata*, 425 F.3d 886, 899 (10th Cir. 2005) (approving an instruction that told the jury that, in determining whether defendant acted with intent, it could consider training on permissible uses of force and use of force reports); *Goodwin v. City of Painesville*, 781 F.3d 314, 324 (6th Cir. 2015) (in context of qualified immunity analysis, court considers an officer's actions in a given case "in light of testimony regarding the training that [the officer] received"); *Weigel*, 544 F.3d at 1155 (in context of qualified immunity analysis, "the reasonableness of an officer's actions

11

must be assessed in light of the officer's training"); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) (in context of qualified immunity analysis, holding that training materials were relevant, in part to show the officers' knowledge about the boundaries of reasonable force).

Defendant's more specific relevance-based objections to Sergeant Snelling's proffered testimony also should be rejected. Defendant argues, for example, that Sergeant Snelling should not be permitted to testify about training that defendant received regarding firing into moving vehicles, firing into crowds, and firing at people not clearly visible. Dkt. No. 80 at 7. But as the evidence at trial will establish, this case involves an officer who fired into a moving vehicle, full of teenagers, one of which was operating the vehicle while not clearly positioned in the driver's seat. It is therefore clearly relevant to defendant's state of mind that he was trained on these very topics prior to the shooting in question.

Defendant also objects to the admission of any evidence related to training that defendant received, post-academy, while a CPD officer. Dkt. No. 80 at 5. Defendant does not adequately explain why this later training is less relevant to defendant's state of mind on December 22, 2013, than the training defendant received approximately seven years earlier. Indeed, the only argument defendant makes in support of the distinction he draws between training in the academy and training after the academy is that the post-academy training is "immaterial" because it is based upon CPD internal policies. *Id.* But so, too, is the academy training. Just because the principles taught during training are memorialized in an internal policy

12

does not make them "immaterial," or any less relevant to defendant's state of mind.

To the extent defendant argues that the government should not be permitted to introduce evidence of CPD's use-of-force policies themselves, the parties are in agreement that the existence of those policies, and violations of those policies, do not bear on whether defendant violated his victims' constitutional rights. *See Thompson*, 472 F.3d at 453-55 (CPD General Orders regarding use of force "shed no light on what may or may not be considered 'objectively unreasonable' under the Fourth Amendment"); *Legg v. Pappas*, 383 F. App'x 547, 550 (7th Cir. 2010) (concluding that testimony on "police department policies and standards of police practice was irrelevant to determining what is objectively reasonable under the Fourth Amendment"); *Brown*, 2016 WL 806552, at *4.[3] Nevertheless, testimony about what defendant heard while being trained, absent reference to a particular policy or state law that might underlie that particular training, is still relevant to defendant's state of mind at the time of the shooting.

Finally, to the extent defendant suggests that the government is somehow trying to impermissibly "disguise" expert testimony through the testimony of Sergeant Snelling and Ms. Hyfantis, his argument lacks foundation. The government has made clear through its witness disclosure that it intends to call Sergeant Snelling and Ms. Hyfantis for highly relevant testimony that a fact witness can provide. While such testimony may prejudice the defendant—indeed, it will help show that

---

[3] Indeed, these same principles also underlie the government's motion to exclude any reference by defendant to an Illinois state law, 720 ILCS 5/7-5(a), that addresses the use of deadly force. *See* Doc. 77 at 2-6.

13

defendant acted willfully and intentionally—it is not unfairly prejudicial. S*ee generally Old Chief v. United States*, 519 U.S. 172, 180 (1997) (defining unfair prejudice as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By:     */s/ Georgia N. Alexakis*
GEORGIA N. ALEXAKIS
ERIKA L. CSICSILA
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

Date:  August 3, 2017