UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 590 |
| v. | ) | |
| | ) | Honorable Gary Feinerman |
| MARCO PROANO | ) | |

**GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE
OF PATTERN OR PRACTICE INVESTIGATION
INTO THE CHICAGO POLICE DEPARTMENT**

The UNITED STATES OF AMERICA, by and through JOEL R. LEVIN, Acting United States Attorney for the Northern District of Illinois, respectfully requests that this Court preclude defendant from introducing any evidence related to, or making reference to, an investigation into the Chicago Police Department ("CPD") by the Department of Justice ("DOJ") and the U.S. Attorney's Office for the Northern District of Illinois ("USAO"), including the report issued at the conclusion of the investigation.

**Background**

On December 7, 2015, the DOJ's Civil Rights Division and the USAO initiated an investigation into CPD and the Independent Police Review Authority ("IPRA") "to determine whether CPD is engaging in a pattern or practice of unlawful conduct and, if so, what systemic deficiencies or practices within CPD, IPRA, and the City of Chicago might be facilitating or causing this pattern or practice." Ex. A at 1. Approximately one year later, at the end of the "pattern or practice investigation,"

the DOJ and USAO issued a report detailing the scope of the investigation, its findings, and recommendations. *Id.*

As explained in the report, the investigation, among other things, "assessed CPD's use of force, including deadly force, and addressed CPD policies, training, reporting, investigation, and review related to officer use of force." *Id.* The investigation concluded that (1) CPD engages in a pattern or practice of unconstitutional use of force; (2) Chicago's deficient accountability systems contribute to CPD's pattern or practice of unconstitutional conduct; (3) CPD does not provide officers with sufficient direction, supervision, or support to ensure lawful and effective policing; and (4) CPD must better support and incentivize policing that is lawful and restores trust among Chicago's marginalized communities. *Id.* at i-ii.

More specific to the facts underlying this matter, the investigation found that CPD officers use deadly force in violation of the Fourth Amendment, including by "shoot[ing] at vehicles without justification"; using unreasonable force against children and teenagers; and employing "overly harsh and unfair" policing techniques in Chicago's high-crime neighborhoods. *Id.* at 5, 27, 34-35, 142-43. The investigation found evidence of officers, including supervisors, falsifying reports and affirmatively lying in interviews and sworn testimony in order to conceal police misconduct and thwart investigations into police misconduct. *Id.* at 74-75, 110-11. Finally, the report criticized CPD's efforts to train its recruits at the academy as well as it officers on an ongoing basis, particularly with respect to the use of force. *Id.* at 5, 93-103.

As part of the investigation, government attorneys spoke to a number of individuals employed by CPD. One of these individuals was Sergeant Larry Snelling, a supervisor in CPD's Education and Training Division. At trial, the government expects Sergeant Snelling to testify about the use-of-force training defendant received as a recruit in the police academy and additional use-of-force training defendant received after becoming an officer. As part of the pattern or practice investigation, government attorneys interviewed Sergeant Snelling on at least four occasions on several topics, some related to training and others related to CPD more broadly. Government attorneys also observed a course Sergeant Snelling taught on the topic of "force mitigation/mental health."[1] Government attorneys took notes during their interviews and observation of Sergeant Snelling.

Pursuant to its obligations under 18 U.S.C. § 3500, the government has produced those notes, in relevant part, to defendant.[2]

---

[1] CPD introduced this course in 2016 to train officers on how to handle individuals they encounter with mental health needs effectively.

[2] The government redacted interview notes that were not relevant to Sergeant Snelling's anticipated testimony, reflected statements made by other individuals in the course of classroom observation, or that contained privileged work-product.

### Argument

**Defendant Should Be Precluded from Introducing Evidence About, or Making References to, the CPD Pattern or Practice Investigation and Resulting Report.**

At trial, the government does not intend to introduce any evidence of the CPD pattern or practice investigation, including the resulting report. This Court should prohibit defendant from eliciting testimony, and making arguments and statements, referencing the investigation and accompanying report, as well from attempting to introduce the report itself into evidence. Any such evidence, arguments, and statements would be irrelevant to the § 242 charges defendant faces, would mislead the jury, and would confuse the pertinent issues. *See* Fed. R. Evid. 401, 403.

Criminal civil rights prosecutions focus on an individual officer's culpability for particular misconduct and seek to punish and deter discrete instances of wrongdoing. So individualized is the inquiry that to prove that an officer used excessive force in violation of Section 242 that the government must establish that the officer's use of force was unreasonable from the perspective of a reasonable officer facing the same, fact-specific circumstances as defendant and that the individual officer intended to deprive a victim of a constitutional right. *See United States v. Bradley*, 196 F.3d 762, 769-70 (7th Cir. 1999).

In contrast, pattern-or-practice investigations focus on systemic or institutional issues that lead to widespread police misconduct and recommend a law enforcement agency's implementation of a wide range of reforms over time. The legislative history behind 42 U.S.C. § 14141, the statute that authorizes the Attorney

General to conduct pattern or practice investigations, expressly recognized this distinction between § 242 prosecutions and pattern or practice investigations. *See* H.R. REP. 102-242, 102d Cong., 1st Sess., at 406, 1991 WL 206794, at *136-37 (noting that while §§ 241 and 242 allow "[t]he Justice Department . . . [to] prosecute individual police officers," those statutes did not give the DOJ "authority to address systemic patterns or practices of police misconduct").

Given these inherent differences between individual civil rights matters and broader pattern-or-practice investigations, in the § 1983 context, courts have found plaintiffs' reliance on DOJ reports inadequate for purposes of establishing claims against individual officers. In *Johnson v. City of Ferguson*, for example, plaintiff filed a § 1983 suit against the City of Ferguson, Missouri, the city's former police chief, and a former police officer, alleging that the former officer had used excessive force in violation of plaintiff's constitutional rights and that the city and police chief were liable for the officer's actions "in light of their perpetration of a pattern and practice of unconstitutional and racially discriminatory policing which sanctioned police officers' use of unnecessary force and unlawful seizures." 2016 WL 1023028, at *1 (E.D. Mo. Mar. 15, 2016). Plaintiff supported his allegations by "quot[ing] extensively from a report by the Department of Justice . . . disclosing the findings of the DOJ's investigation of the Ferguson Police Department following the shooting death of [Michael] Brown." *Id.* at *2. That report found "that the Ferguson Police Department routinely fails to supervise the conduct of its officers, particularly with regards to their use of force, which serves to condone officer misconduct," *id.*, and that the city

5

and police department "were more concerned with using officers as means to collect fines than as protectors of public safety," *id.* at 10. The district court found plaintiff's reliance on the DOJ's report for purposes of his claim against the individual officer to be misplaced, explaining that the report "only speak[s] to the general motivations of Ferguson and the Ferguson Police Department" rather than "the specific acts" of the individual officer "on the date in question." *Id.*[3]

Similarly, in *Turner v. County of Los Angeles*, the district court explained that a § 1983 plaintiff could not rely on a DOJ report regarding training deficiencies within the Los Angeles Sheriff's Department ("LASD") to help establish her alleged constitutional deprivations, where plaintiff had not "pointed to evidence of specific deficiencies in the training of any deputy involved in her incident, or otherwise attempted to establish a causal link between the findings of the DOJ report and plaintiff's interactions with LASD personnel." *See* No. 2:13-CV-04149-CAS, 2014 WL 7205036, at *12 (C.D. Cal. Dec. 16, 2014).

Here, the fact that the CPD pattern or practices investigation found, at a general level, deficiencies in CPD's training of its officers does not sufficiently bear on the specific training that defendant received as a CPD recruit and officer, such that the existence of the investigation, its findings, and the resulting report should

---

[3] The Eighth Circuit later held that the DOJ report helped substantiate plaintiff's claim that Ferguson's former police chief was liable as a supervisor under § 1983, for purposes of withstanding defendants' motion to dismiss a complaint. *See Johnson v. City of Ferguson, Missouri*, No. 16-1697, 2017 WL 3129437, at *6 (8th Cir. July 25, 2017). Like the district court, however, the appeals court did not rely on the DOJ report in assessing the individual officer's liability or whether he used excessive force.

be referenced at trial. Defendant can still cross-examine Sergeant Snelling regarding the adequacy of any training defendant received. But such cross-examination can and should be done without specifically referencing the DOJ investigation and report.[4]

If defendant were permitted to do otherwise, that allowance runs the risk of confusing and distracting the jury from the pertinent issue—an individual defendant's alleged misconduct in an individual instance—and creating "the potential of a mini-trial concerning the DOJ's findings" with respect to CPD as an institution. *See Fontana v. City of Fed. Way*, No. C11-998 RAJ, 2014 WL 202104, at *3-4 (W.D. Wash. Jan. 17, 2014) (in a § 1983 suit, excluding under Rule 403 a DOJ report finding that the Seattle Police Department had engaged in a pattern or practice of using unnecessary or excessive force).[5] Such evidence runs the risk, as the district court in *Fontana* recognized, of being "misuse[d] by the jury in relation" to defendant. *Id.* at *4 (evidence of the DOJ's findings with respect to the Seattle Police Department could prejudice individual officers).

---

[4] The government acknowledges that, if Sergeant Snelling were to testify in a manner inconsistent with his prior statements to DOJ investigators, this may be a valid basis for impeachment using prior statements reflected in the interview notes. In that event, and in light of the Rule 403 considerations detailed in this motion, the government would request that the impeachment be conducted in a sanitized manner, for example, without explicit reference to the report or the findings of the pattern and practice investigation.

[5] The district court in *Fontana* reserved ruling on whether any examination of an expert witness—not a fact witness—into the DOJ's findings would be unduly prejudicial under Rule 403 until after a pretrial conference. 2014 WL 202104, at *4. The matter then settled before the pretrial conference took place. *See Fontana v. City of Fed. Way*, Dkt. No. 120 (W.D. Wash. Feb. 26, 2014). Here, Sergeant Snelling will not testify as an expert witness.

## **Conclusion**

For the reasons set forth above, the government respectfully requests that this Court grant its motion seeking to exclude from trial any evidence, argument, or statements regarding the pattern or practice investigation by the Department of Justice and the U.S. Attorney's Office for the Northern District of Illinois into the Chicago Police Department.


Dated: August 8, 2017                     Respectfully submitted,

                                                      JOEL R. LEVIN
                                                    Acting United States Attorney

                                    By:    */s/ Georgia N. Alexakis*
                                                    GEORGIA N. ALEXAKIS
                                                    ERIKA L. CSICSILA
                                                    Assistant United States Attorneys
                                                    219 S. Dearborn Street, 5th Floor
                                                    Chicago, Illinois 60604
                                                    Tel: (312) 353-5300
                                                    Fax: (312) 886-0657