Case: 1:16-cr-00590 Document #: 153-1 Filed: 10/18/17 Page 1 of 8 PageID #:1299

# EXHIBIT A

1

```
                    IN THE UNITED STATES DISTRICT COURT
1                 FOR THE NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION
2

3
    UNITED STATES OF AMERICA,       )
4                                   )
                  Plaintiff,        )
5                                   )
    -vs-                            )   Case No. 16 CR 590
6                                   )
    MARCO PROANO,                   )   Chicago, Illinois
7                                   )   November 8, 2016
                  Defendant.        )   10:30 a.m.
8

9                      TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE GARY FEINERMAN
10

11  APPEARANCES:

12  For the Government:      HON. ZACHARY T. FARDON
                             UNITED STATES ATTORNEY
13                           BY:  MS. GEORGIA N. ALEXAKIS
                                  MS. ERIKA L. CSICSILA
14                           219 South Dearborn Street, Suite 500,
                             Chicago, Illinois  60604
15                           (312)353-5300

16

17  For the Defendant:       LAW OFFICES OF DANIEL Q. HERBERT
                             BY:  MR. DANIEL Q. HERBERT
18                           206 South Jefferson Street
                             Suite 100
19                           Chicago, Illinois  60661
                             (312) 655-7660
20

21
    Court Reporter:
22
                    CHARLES R. ZANDI, CSR, RPR, FCRR
23                        Official Court Reporter
                        United States District Court
24             219 South Dearborn Street, Room 2128
                        Chicago, Illinois  60604
25                  Telephone:  (312) 435-5387
              email:  Charles_zandi@ilnd.uscourts.gov
```

1 disagreement?

2 MS. ALEXAKIS: I don't believe there -- one thing
3 that might be a little unresolved is there was a motion asking
4 for the early setting of deadlines related to exhibit lists
5 and witness lists; and the parties have discussed that what
6 might make more sense is to set a trial date with the Court,
7 and then the parties can confer amongst themselves and sort of
8 work backwards from that trial date as to what might be a
9 reasonable deadline.

10 MR. HERBERT: Agreed. One issue I think we've
11 resolved, I think, in a minor way, but there's still other
12 issues that we're going to ask the Court for intervention on,
13 is the bill of particulars. And if -- essentially what we're
14 looking for, Judge, is we are looking for more specificity
15 regarding the charges in this case so that we can accurately
16 prepare our defense.

17 THE COURT: I have to confess, I have trouble even
18 beginning to understand your argument on that.

19 MR. HERBERT: That's --

20 THE COURT: Because we have -- in most cases, we
21 don't have a videotape of the alleged criminal conduct, and
22 here we do.

23 MR. HERBERT: Right.

24 THE COURT: So, watch the video. That will give you
25 everything you need to know in order to defend the case. And

again, maybe it's criminal; maybe it's not. But I don't see how you could reasonably say that you don't know what Mr. Proano is being charged with doing. Tell me what I'm missing.

MR. HERBERT: Sure. First of all, with respect to -- the indictment alleges bodily injury. I am assuming that the bodily injury referred to is gunshot wounds, but I want to make sure that there's not going to be an allegation that in the course of an arrest, somebody twisted his ankle and that that is the bodily injury. And I don't mean to make up a preposterous argument, but I don't think it's that burdensome of the government to identify the gunshots as being the bodily injury.

THE COURT: Did the Rule 16 discovery have anything about gunshot wounds?

MR. HERBERT: I'm sure it did, your Honor. I can't represent for sure, but I'm sure it did have information about gunshot wounds.

THE COURT: And is there any scenario that you could envision where the government would be proceeding on a twisted ankle, as opposed to a gunshot wound?

MR. HERBERT: The only scenario that I could see is if the evidence was going in poorly regarding the shots, in other words, the trial of fact appeared to believe that the shots were reasonable, I certainly would not want the

1  government -- and I'm not implying anything underhanded on the
2  government's part, but if the government were able to prove
3  that an injury -- a separate injury sustained during the
4  course of the arrest was -- results in bodily injury, then
5  even if the shots were found to be not unreasonable, then they
6  could still proceed and be victorious based upon that other
7  injury, if that makes sense.
8             THE COURT: I understand what you're saying. I'm not
9  sure it's even a theoretical possibility. Let me ask the
10 government for its thoughts.
11            MS. ALEXAKIS: Your Honor, I believe -- I thought
12 that the government had settled this with the defendant last
13 week, but we represented in a telephone conversation with the
14 defendant, and we can say it for the record as well, that the
15 government's -- that the bodily injuries at issue here are the
16 gunshot wounds, that those are the bodily injuries that the
17 government intends to prove at trial, and that with respect to
18 the use of force, the government's position is that all
19 16 shots fired by the defendant represented an unreasonable
20 use of force.
21            MR. HERBERT: And that satisfies me with respect to
22 that, Judge.
23            THE COURT: Okay.
24            MR. HERBERT: But I guess there's one other portion,
25 though. In light of the circumstances in this case, I still

1  believe that the charges need to be more specific, and I'll
2  explain why briefly, Judge.
3      As you know, my client is a Chicago police officer.
4  The night in question, he was on duty working as a Chicago
5  police officer. The police department policy, as well as
6  state law, gives police officers the authority to use force to
7  effect an arrest, gives police officers the authority to use
8  deadly force to prevent escape when someone is using a deadly
9  weapon, such as a vehicle. It also allows them to use deadly
10 force in protection of others.
11     So, I think it needs to be cleared up. If the law
12 and the department policy do not prohibit and more
13 specifically allow for the conduct of Mr. Proano, I think
14 that the government needs to identify what actions were
15 unreasonable in light of the laws and the policy in place.
16     THE COURT: Is the answer the 16 gunshots?
17     MS. ALEXAKIS: Yes, your Honor. There's a
18 disagreement as to whether or not the use of force was in
19 accordance with the policy and the law.
20     MR. HERBERT: Well, I guess my only -- and I tried to
21 look up a little support for this, and there wasn't, but if --
22 Marco Proano's already put his defense out there. It's
23 certainly not a secret. But he was -- he fired at the driver
24 of the vehicle because he feared for the life of other people,
25 specifically, the individual that was hanging outside of the

1 vehicle.

2 It's our position that that's within the law. That's
3 within the policy. So, I think that the government needs to
4 include in the indictment or it needs to go to the jury at
5 some point that Marco Proano's belief that firing at the
6 driver to protect the life of Individual C, who was hanging
7 outside of the car, was not reasonable.

8 THE COURT: Right. You said it needs to be in the
9 indictment or it needs to go to the jury, and those are two
10 very different things. And on going to the jury, I'll have to
11 see what the law says, and I'll have to see what both parties
12 argue; but it seems that the argument you're making either
13 goes to the elements of the defense or may be an affirmative
14 defense. And I haven't looked at it, so I can't speak one way
15 or the other to that.

16 But that's something that I don't think needs to
17 be -- without having any authority provided, it's something
18 that does not need to be in the indictment; but it may very
19 well be something that needs to be in the jury instructions,
20 but I don't know.

21 What I do know -- again, maybe there's authority out
22 there, and I'm happy to revisit this issue if you come up with
23 authority; but my understanding is that that level of detail
24 does not need to be in the indictment for purposes of a bill
25 of particulars.

1          MR. HERBERT: Understood.

2          THE COURT: So, anything else with respect to the
3 bill of particulars?

4          MS. ALEXAKIS: Not from the government.

5          MR. HERBERT: Nothing else.

6          THE COURT: Okay. So, what I'll do is I'll deny the
7 motion for a bill of particulars. And again, if you want to
8 come back with authority, you certainly can and should do so.

9          With respect to the Rule 16, that's -- we still have
10 an open issue on that. With respect to *Jencks and Giglio* and
11 witnesses and exhibits, will that cascade off of a trial date
12 if we set a trial date?

13          MS. ALEXAKIS: Your Honor, the government represented
14 to the defendant that at this time, it has already produced
15 all *Jencks* material that's in its possession. The government
16 obviously intends to supplement that discovery as necessary.
17 The same with the *Giglio* and any *Brady* material.

18          THE COURT: So, do you want -- we'll get to the
19 Rule 16 in a moment, but do you want to set a trial date now?
20 Are you prepared to?

21          MR. HERBERT: I think we are. We spoke in big
22 picture view, depending what the Court calendar is.

23          MS. ALEXAKIS: Yes. Depending on the Court's
24 calendar, the parties are looking at a potential trial date
25 of August -- late summer or early fall, your Honor.